# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

In re

**HELICRAFT HOLDINGS, LLC,**

Debtor.

Case No. **17-60120-11**

**MEMORANDUM OF DECISION**

At Butte in said District this 18th day of October, 2017.

After due notice a hearing was held in this Chapter 11 case at Missoula on October 5, 2017, on the "Final Application for Professional Fees" filed by Paul J. Petit ("Petit"), who was employed by the Debtor-in-Possession as "special counsel for negotiation and non-bankruptcy legal work in connection with the sale of Debtor's real property."  An objection to the fees requested by Petit was filed by the Office of U.S. Trustee ("UST") on the grounds they were related to general bankruptcy services, rather than non-bankruptcy legal work for which Petit's employment was approved by the Court under 11 U.S.C. 327(e).  The total fees sought by Petit are $14,520.  The fees that the UST objects to are $5,360.

The Debtor was represented at the hearing by attorney Harold V. Dye.  The UST was represented by attorney Aaron G. York ("York").  Petit appeared and testified.  After review of the Final Application for Professional Fees, the UST's objection, Ex. A and applicable law, for the reasons set forth below the UST's objection is sustained and Petit will be awarded reasonable fees of $8,920 for non-bankruptcy legal work for which the Court approved his employment as special counsel.

1

# FACTS[1]

Prior to filing bankruptcy, Debtor in Possession, Helicraft Holdings, LLC ("Debtor") was represented by Petit beginning in February 2016 and continuing to the petition date. In addition, Petit had represented one of Debtor's members, Kenneth Scott for in excess of 20 years[2]. The work performed by Petit included representation of Debtor in matters involving its secured creditors, including, Farmers State Bank, Lake County Development Corporation, and Hi-Noon Petroleum. Petit was identified on Schedule E/F as a creditor with an unsecured claim in the amount of $24,470.22 attributable to his pre-petition services.

Petit's pre-petition work made him "intimately familiar" with Debtor's financial circumstances. The books and records of Debtor were poor according to Petit. And, during this prepetition period the relationship between the Members deteriorated and ultimately resulted in a divorce proceeding. The divorce strained the relationship between the Members and their communication with each other was deficient. To avoid a scheduled foreclosure sale by Farmers State Bank, Debtor filed bankruptcy.

Early in this case, Debtor sought approval of the employment of Petit as special counsel for "negotiation and non-bankruptcy legal work in connection with the sale of the Debtor's real property. ECF No. 6. Petit's employment as special counsel was approved on March 24, 2017, and the Order noted:

> Section 327(e), on the other hand, authorizes the trustee to employ, for a specified purpose, other than to represent the trustee generally in fulfilling his duties in the case, an attorney who has represented the debtor.[3]

---

[1] There is no transcript, but Petit's testimony is at ECF No. 80.

[2] Debtor had two members Kenneth and Adrian Scott, husband and wife (collectively referred to as the "Members").

[3] Petit did not seek employment under 11 U.S.C. § 327(a) because his prior work for debtor and status as a creditor in the case precluded him from satisfying the "disinterestedness" requirement under that section.

2

ECF No. 22.

To assist Debtor's counsel, Petit provided Debtor's counsel with a wealth of information that the Members were incapable of providing to counsel, on behalf of the Debtor. Due to Petit's "intimate familiarity" with Debtor's affairs, Debtor's bankruptcy counsel asked Petit to participate in the Debtor's initial interview and attend the Debtor's 341 Meeting. Petit attended these meetings because the Members lacked certain information about the Debtor that Petit had developed during his representation of Debtor. Petit was questioned at the Initial Debtor Interview ("IDI") and at the 341 Meeting about the Debtor's affairs.

In addition to participating in the IDI and attending the 341 meeting, Petit assisted Debtor in other ways. Following a motion to dismiss or convert because no proof of liability insurance protecting the interests of the bankruptcy estate had been provided to the UST (ECF No. 13), Petit actively pursued replacement insurance for the Debtor. The UST subsequently withdrew the motion to dismiss or convert because Petit was successful. Finally, as a result of the discord between the Members, Petit also facilitated and coordinated opening Debtor's, "debtor in possession" account ("DIP account").

Debtor filed its plan of reorganization which it identified as a "Plan of Liquidation dated May 16, 2017" (the "Plan"), and explained that the Debtor's real property would be sold to fund the Plan. Debtor entered a series of stipulations between it and its creditors that allowed for agreed plan treatment of those claims. A First Amended Plan of Liquidation dated June 19, 2017 (the "Amended Plan") was filed following approval of these stipulations. The means of implementing the Plan remained unchanged in the Amended Plan and provided that, "Debtors' real property shall be sold through the efforts of special counsel and/or a broker." There were no objections to confirmation and Debtor's Amended Plan was confirmed on July 27, 2017.

Petit filed an Application for Compensation requesting $14,520 in attorney's fees (the "Application").[4] The UST filed an objection to $5,360 in fees because the work that corresponded to these entries was outside the scope of services for which Petit's employment was approved (the "Objection"). ECF No. 73-1. According to the Objection, Petit was not employed to perform general bankruptcy work such as participating in the IDI, attending the 341 meeting, securing insurance and opening the DIP account. Since these activities were outside the scope of Petit's approved employment under § 327(e), Petit's fees for this work should not be approved.

## DISCUSSION

Section 327(e) provides that a trustee, and therefore a debtor in possession pursuant to 11 U.S.C. § 1107(a), "with the court's approval, may employ, for a special specified purpose, other than to represent the trustee in conducting the case, an attorney that does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed" 11 U.S.C. § 327(e). A leading commentator writes that the "special purpose" for which employment of an attorney is authorized under § 327(e) "must be unrelated to the reorganization of the debtor and must be explicitly defined or described in the application seeking approval of the attorney's employment …. Subsection (e) 'does not authorize the employment of the debtor's attorney to represent the estate generally or to represent the trustee in the conduct of the . . . case.'" 3 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY, ¶ 327.04[9][d] (16th ed. 2017). Thus, under 11 U.S.C. § 327(e), Petit is entitled to reasonable compensation for work that (i) was not related to Debtor's reorganization and (ii) that was within the scope of services described in the Application.

---

[4] At the hearing the fees subject to approval under the application were reduced to $14,200.00.

4

Neither participation at the IDI, nor attending the 341 Meeting can be characterized as "unrelated to the reorganization of the debtor." To the contrary, early in the case, these activities play a fundamental role in any reorganization effort under chapter 11. Further, these activities do not qualify as either "negotiation" or "non-bankruptcy legal work in connection with the sale of the Debtor's real property", as Petit's employment was defined in the Application.

Establishing a DIP account is a bankruptcy related task that is essential to a debtor's reorganization. The importance of this task is ordinarily highlighted at the IDI. According to the United States Trustee:

> At the IDI, the United States Trustee should set forth the statutory duties and obligations of a debtor in possession. The debtor's representatives should be provided with a copy of the United States Trustee Program's chapter 11 operating guidelines and monthly report forms, which should be explained and discussed. The procedures for calculating and paying the quarterly fee assessed pursuant to 28 U.S.C. § 1930(a)(6) should be explained. The United States Trustee should ensure that the debtor has closed its former bank accounts and established separate debtor in possession bank accounts. The debtor should be required to provide proof that appropriate insurance coverage is being maintained.

*United States Trustee Program Policy and Practices Manual*, Volume 3, Chapter 11 Administration § 3-3.1.3 (July 2016).[5] Absent an effort to reorganize under the bankruptcy code, there would be no reason to establish a DIP account. Petit's services in furtherance of establishing a DIP account were related to Debtor's reorganization efforts, and outside the scope of services for which his employment was approved (negotiation and non-bankruptcy legal work in connection with the sale of the Debtor's real property)[6].

Obtaining and maintaining insurance was directly related to Debtor's reorganization efforts. This Court and others have concluded that a debtor's failure to maintain or otherwise

---

[5] https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual

[6] Examples of non-bankruptcy legal work in connection with sale of Debtor's property might have included preparing closing instructions, deeds, and negotiating a buy-sell agreement.

5

properly insure property constitutes cause for conversion or dismissal under 11 U.S.C. § 1112. *See* 11 U.S.C. § 1112(b)(4)(C); and, *In re Blixseth*, 2009 WL 1525994 (Bankr. D. Mont. 2009). Obtaining and maintaining insurance was important to getting through confirmation because failing to have insurance on the property posed a risk to the estate, and provided a basis for a motion to dismiss or convert. On March 17, 2017, the UST moved to dismiss or convert the case explaining, "No proof of liability insurance protecting the interests of the bankruptcy estate has been provided indicating that Debtor has such insurance." ECF No. 13. Petit's success in obtaining insurance resulted in withdrawal of the UST's motion to dismiss or convert. Although there may have been non-bankruptcy related reasons for obtaining insurance coverage, those considerations cannot be divorced from Debtor's reorganization efforts because absent withdrawal of the motion to dismiss or convert, Debtor's reorganization efforts were in peril.

The Court has not reached these conclusions easily because it is clear Petit's involvement contributed to the filing of the Amended Plan which was confirmed. Despite this, there is no plausible way to conclude that Petit's (i) attendance and participation at the IDI and 341 Meeting, (ii) obtaining and maintaining insurance coverage, and (iii) efforts surrounding establishing a DIP account, can credibly be characterized as unrelated to Debtor's reorganization efforts and "negotiation and non-bankruptcy legal work," as was stated in the Application. Courts faced with similar facts have concluded that, "since a debtor's reorganization is the principal purpose of the chapter 11 case, counsel who cannot meet the disinterestedness standard of § 327(a) should not be able to bypass this requirement through employment as special counsel." *In re Tidewater Memorial Hospital, Inc.*, 110 B.R. 221, 228 (Bankr. E.D.Va. 1989).

6

There is no indication that Debtor sought approval of Petit's employment under § 327(e) in order to bypass the disinterestedness standard of § 327(a). As Petit explained, the Debtor's books and records were poor, and the Members ability to communicate with each other was at best inefficient. As the case developed and the Members' personal strife interfered with their ability to meaningfully contribute to Debtor's reorganization efforts, Petit emerged as the most accessible and knowledgeable individual with the information needed by Debtor's bankruptcy counsel, the UST and creditors. Although Petit was the obvious choice to fill the gap left by the non-communicative disengaged Members, doing so exceeded the scope of the "specific purpose" for which he was employed under 11 U.S.C. § 327(e).

While Petit likely had the best of intentions, the distinctions between §§ 327(a) and (e) would be meaningless if this Court approved fees for work performed by Petit that was bankruptcy related and outside the defined scope of his approved employment. The distinctions between §§ 327(a) and (e) are important and will not be glossed over by this Court. Petit's fees attributable to the IDI, 341 meeting, DIP account and insurance were directly related to Debtor's reorganization efforts, and do not constitute "negotiation and non-bankruptcy legal work," (the defined purposes for which he was employed as special counsel).

Turning to the Objection, it specifically identifies 49 separate time entries submitted with the Application that in the aggregate total $5,360 in fees. After reviewing each of these entries, 48 entries include references to services involving bankruptcy related work, including work related to the IDI, 341 Meeting, DIP account, insurance, and general bankruptcy tasks. The UST also objected to an entry on 5/17/17 for .4 hours, $80. However, this entry did not as clearly reflect bankruptcy related work, or work outside Petit's defined employment, so the Court will allow it. With the exception of the May entry for .4 hours, $80, the remaining 48 entries and the

7

fees associated with the work described will not be approved because approval of those fees would be inconsistent with 11 U.S.C. § 327(e). The Trustee's objection will be sustained in the amount of $5,280.

**IT IS ORDERED** the UST's objection to Petit's fees in the amount of $5,360 is sustained in part ($5,280) and denied in part ($80); Petit's Final Application for Professional Fees filed on August 3, 2017 (ECF No. 70) is approved in part and denied in part; and Petit is awarded reasonable professional fees in the amount of $8,920 ($14,200 requested, less $5,280 that was objected to) as an administrative expense.

_____
Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge